## SCHNELL ET AL. *v.* THE VALLESCURA.

No. 134. Argued November 14, 1934.—Decided December 3, 1934.

*Mr. Joseph Joffe,* with whom *Mr. Louis Joffe* was on the brief, for petitioners.

*Mr. Homer L. Loomis* for respondent.

300

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioners brought suit in admiralty in the district court for Southern New York, to recover damages for injury to a shipment of onions on respondent's S. S. "Vallescura" from Spain to New York City. The onions, receipt of which in apparent good condition was acknowledged by the bill of lading, were delivered in New York damaged by decay. The vessel pleaded as a defense an exception, in the bill of lading, from liability for damage by "decay" and "perils of the seas," and that the damage "was not due to any cause or event arising through any negligence on the part of the vessel, her master, owner or agents."

On the trial there was evidence that the decay was caused by improper ventilation of the cargo during the voyage, and that the failure to ventilate was due in part to closing of the hatches and ventilators made necessary by heavy weather, and in part to the neglect of the master and crew in failing to keep them open at night in fair weather. The district court entered an interlocutory decree, adjudging that the libellants recover the amount of the damage sustained by them, caused by closing the hatches and ventilators during good weather, and appointing a special commissioner to ascertain and compute the amount of damage.

The commissioner, after hearing evidence, found that it was impossible to ascertain how much of the damage was due to want of ventilation in fair weather and how much to want of it in bad. But, after comparing the periods during which the ventilators were negligently closed with those during which they were open or properly closed,[1] he stated: "It would seem, therefore, that the

---

[1] The voyage lasted twenty-three days. The commissioner found that during the voyage, day and night together, the hatches and ventilators were kept open only 170 hours, that they were properly closed 144 hours, and improperly closed for 238 hours.

greater part of the damage must have been due to improper shutting of the hatches and ventilators." He concluded that as the vessel had failed to show what part of the damage was due to bad weather, the petitioner should recover the full amount of the damage. The district court, accepting the report of the commissioner as presumably correct, as required by Admiralty Rule No. 43½, 286 U. S. 572, found no basis for rejecting its conclusions and gave judgment to libellants accordingly. The Court of Appeals for the Second Circuit reversed, 70 F. (2d) 261, holding that as the damage was within the clause of the bill of lading exempting the vessel from liability for decay, the burden was on petitioner to show what part of the damage was taken out of the exception, because due to respondent's negligence.

Although certiorari was granted to review this ruling of the court below, most of respondent's argument before us was given over to the contention that the record discloses no finding, by either court below, that any part of the damage was caused by respondent's negligence. The decision of the District Court was made before the promulgation of Rule 46½ in Admiralty, 281 U. S. 773, requiring the trial court to make special findings of fact. No formal findings were made, but in directing entry of the interlocutory decree, and after reviewing the evidence and commenting on the fact that the hatches and ventilators had been kept closed at night in fair weather, a circumstance which the trial judge declared established negligence in the care and custody of the cargo, he stated: " Thus it appears that this notoriously perishable cargo of Spanish Onions (The Buckleigh, 1929 A. M. C. 449, 450) was deprived of all ventilation during the nighttime, regardless of the state of the weather. Such treatment was obviously ruinous and must have caused substantial damage." We have no doubt that this was intended to

be a finding that negligence in failing to provide proper ventilation was the cause of some of the damage and that, as such, it was adequately supported by evidence. The commissioner and the court below assumed it to be such and we so accept it.

The failure to ventilate the cargo was not a " fault or error in navigation or management " of the vessel, from the consequences of which it may be relieved by § 3 of the Harter Act of February 13, 1893, § 3, c. 105, 27 Stat. 445; § 192, Tit. 46, U. S. C. The management was of the cargo, within the meaning of §§ 1 and 2 of the Act, and not of the vessel, to which § 3 relates. *The Germanic,* 196 U. S. 589, 597; *Knott* v. *Botany Mills,* 179 U. S. 69, 73, 74; *The Jean Bart,* 197 Fed. 1002, 1006 (D. C.). Hence, we pass to the decisive question whether, in view of the presumptions which aid the shipper in establishing the vessel's liability under a contract for carriage by sea, it was necessary for the petitioners to offer further evidence in order to recover the damage which they have suffered. If, in the state of the proof which the record exhibits, recovery depends upon their ability to produce evidence which would enable the court to separate the amount of damage attributable to respondent's negligence from that attributable to the unavoidable failure to ventilate in bad weather, they have failed to do so and judgment must go against them. But if respondent can relieve itself from liability only by showing what part of the damage was due to sea peril, in that bad weather prevented ventilation, judgment must go against it for the full damages.

In general the burden rests upon the carrier of goods by sea to bring himself within any exception relieving him from the liability which the law otherwise imposes on him. This is true at common law with respect to the exceptions which the law itself annexed to his under-

taking, such as his immunity from liability for act of God or the public enemy. See Carver, Carriage by Sea (7th ed.) Chap. I. The rule applies equally with respect to other exceptions for which the law permits him to stipulate. *Clark* v. *Barnwell,* 12 How. 272, 280; *Rich* v. *Lambert,* 12 How. 347, 357; *The Propeller Niagara* v. *Cordes,* 21 How. 7, 29; *The Maggie Hammond,* 9 Wall. 435, 459; *The Edwin I. Morrison,* 153 U. S. 199, 211; *The Folmina,* 212 U. S. 354, 361. The reason for the rule is apparent. He is a bailee entrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability. See *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 174, 184; *Chicago & Eastern Illinois R. Co.* v. *Collins Produce Co.,* 249 U. S. 186, 192, 193; *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 379, 380.

To such exceptions the law itself annexes a condition that they shall relieve the carrier from liability for loss from an excepted cause only if in the course of the voyage he has used due. care to guard against it. *Liverpool & Great Western Steam Co.* v. *Phenix Insurance Co.,* 129 U. S. 397, 438; *Compania de Navigacion La Flecha* v. *Brauer,* 168 U. S. 104, 117. This rule is recognized and continued in the first section of the Harter Act, which makes it unlawful to insert any clause in a bill of lading whereby the carrier shall be relieved of liability for negligence.

It is commonly said that when the carrier succeeds in establishing that the injury is from an excepted cause,

the burden is then on the shipper to show that that cause would not have produced the injury but for the carrier's negligence in failing to guard against it. Such we may assume the rule to be, at least to the extent of requiring the shipper to give evidence of negligence where the carrier has sustained the burden of showing that the immediate cause of the loss or injury is an excepted peril. *Clark* v. *Barnwell,* 12 How. 272, 280; *Railroad Company* v. *Reeves,* 10 Wall. 176, 189, 190; *Transportation Co.* v. *Downer,* 11 Wall. 129, 134; *The Victory & The Plymothian,* 168 U. S. 410, 423; *Cau* v. *Texas & Pacific Ry. Co.,* 194 U. S. 427, 432; *The Malcolm Baxter,* 277 U. S. 323, 334.

But this is plainly not the case where the efficient cause of the injury for which the carrier is *prima facie* liable is not shown to be an excepted peril. *The Mohler,* 21 Wall. 230, 234; *The Edwin I. Morrison, supra,* 211. If he delivers a cargo damaged by causes unknown or unexplained, which had been received in good condition, he is subject to the rule applicable to all bailees, that such evidence makes out a *prima facie* case of liability. It is sufficient, if the carrier fails to show that the damage is from an excepted cause, to cast on him the further burden of showing that the damage is not due to failure properly to stow or care for the cargo during the voyage. *Rich* v. *Lambert, supra,* 357; *The Maggie Hammond, supra,* 459; *The Folmina,* 212 U. S. 354, 361; *Chesapeake & Ohio Ry. Co.* v. *Thompson Mfg. Co.,* 270 U. S. 416, 422, 423.

Here the stipulation was for exemption from liability for a particular kind of injury,—decay. But the decay of a perishable cargo is not a cause; it is an effect. It may be the result of a number of causes, for some of which, such as the inherent defects of the cargo, or, under the contract, sea peril making it impossible to ventilate properly, the carrier is not liable. For others, such as negligent stowage, or failure to care for the cargo properly during the

voyage, he is liable. The stipulation thus did not add to the causes of injury from which the carrier could claim immunity. It could not relieve him from liability for want of diligence in the stowage or care of the cargo.

It is unnecessary for us to consider whether the effect of the clause is to relieve the carrier from the necessity, in the first instance, of offering evidence of due diligence in caring for a cargo received in good condition, and delivered in a state of decay. See *The Hindoustan,* 67 Fed. 794, 795 (C. C. A. 2d); *The Patria,* 132 Fed. 971, 972 (C. C. A. 2d); *Loma Fruit Co.* v. *International Navigation Co.,* 11 F. (2d) 124, 125 (C. C. A. 2d); *The Gothic Star,* 4 F. Supp. 240, 241 (D. C.). For here want of diligence in providing proper ventilation is established and it is found that the failure to ventilate has caused the damage. It is enough that the clause plainly cannot be taken to relieve the vessel from bringing itself within the exception from liability for damage by sea peril where the shipper has carried the burden of showing that the decay is due either to sea peril, in that bad weather prevented ventilation, or to the vessel's negligence. Where the state of the proof is such as to show that the damage is due either to an excepted peril or to the carrier's negligent care of the cargo, it is for him to bring himself within the exception or to show that he has not been negligent. *The Folmina, supra.*

Similarly, the carrier must bear the entire loss where it appears that the injury to cargo is due either to sea peril or negligent stowage, or both, and he fails to show what damage is attributable to sea peril. *Corsar* v. *J. D. Spreckels & Bros. Co.,* 141 Fed. 260, 264 (C. C. A. 9th); *The Gualala,* 178 Fed. 402, 406 (C. C. A. 9th); *The Jeanie,* 236 Fed. 463, 472 (C. C. A. 9th); *The Excellent,* 16 Fed. 148 (C. C.); *Thompson* v. *The Nith,* 36 Fed. 383, 384 (C. C.); *Speyer* v. *The Mary Belle Roberts,* 22 Fed. Cas., No. 13,240 (D. C.); *Mainwaring* v. *Bark Carrie Delap,* 1 Fed. 874, 879 (D. C.); *The Aspasia,* 79 Fed. 91 (D. C.);

*Knohr & Burchard* v. *Pacific Creosoting Co.,* 181 Fed. 856, 860 (D. C.) ; *The Charles Rohde,* 8 F. (2d) 506, 507 (D. C.) ; *H. E. Hodgson & Co.* v. *Royal Mail Steam Packet Co.,* 33 F. (2d) 337 (D. C.). In each of these cases the carrier is charged with the responsibility for a loss which, in fact, may not be due to his fault, merely because the law, in pursuance of a wise policy, casts on him the burden of showing facts relieving him from liability.

The vessel in the present case is in no better position because, upon the evidence, it appears that some of the damage, in an amount not ascertainable, is due to sea peril. That does not remove the burden of showing facts relieving it from liability. If it remains liable for the whole amount of the damage because it is unable to show that sea peril was a cause of the loss, it must equally remain so if it cannot show what part of the loss is due to that cause. *Speyer* v. *The Mary Belle Roberts, supra; The Rona,* 5 Asp. 259, 262; Carver, Carriage by Sea (7th ed.), § 78, p. 114.

Since the respondent has failed throughout to sustain the burden, which rested upon it at the outset, of showing to what extent sea peril was the effective cause of the damage, and as the petitioners are without fault, no question of apportionment or division of the damage arises.                                        *Reversed.*